UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TONY BRUMMETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CV-2221 |
| ) | |
| KENCO LOGISTIC SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

# **O R D E R**

Plaintiff, Tony Brummett, filed a Complaint (#1) against Defendant, Kenco Logistic Services, LLC ("Kenco"), on August 18, 2021, followed by an Amended Complaint (#16) on November 9, 2021, against Kenco and additional individual Defendants who were employed by Kenco as managers, alleging discrimination, retaliation, and hostile work environment based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), together with claims of defamation, conspiracy, violations of whistleblower protections, and promissory estoppel.

On September 12, 2022, this court entered an Order (#38) dismissing Plaintiff's Amended Complaint. Plaintiff's Title VII and promissory estoppel claims were dismissed with prejudice, while his claims of defamation, conspiracy, and violation of whistleblower protections were dismissed without prejudice. Plaintiff was directed to file a second amended complaint if he believed he could plausibly state claims over

which this court has jurisdiction, that apply to private employers and employees, and that are not barred by res judicata or preempted by relevant anti-discrimination statutes.

Three motions are currently pending before the court. First, on September 20, 2022, Plaintiff filed a Motion to Alter, Amend, or Reconsider Judgment (#39), to which Defendants filed a Response (#45) on October 4, 2022. Second, Plaintiff also filed a Motion to Change Jurisdiction/Venue (#40) on September 20, 2022, to which Defendants filed a Response (#46) on October 4, 2022. And finally, Plaintiff filed a Second Amended Complaint (#54) on October 31, 2022, against Defendant Kenco only. Kenco filed a Motion to Dismiss (#56) and supporting Memorandum of Law (#57) on November 14, 2022. Plaintiff filed Responses (#61, 63) to the Motion to Dismiss on November 28, 2022.

For the following reasons, Plaintiff's Motion to Alter, Amend, or Reconsider Judgment (#39) and Motion to Change Jurisdiction/Venue (#45) are DENIED. Defendant Kenco's Motion to Dismiss (#56) is GRANTED, and Plaintiff's Second Amended Complaint is dismissed with prejudice.

I. MOTION TO RECONSIDER

In Plaintiff's Motion to Alter, Amend, or Reconsider Judgment, he argues that this court should reconsider its holding that his Title VII claims are barred by res judicata because he was provided a full and fair opportunity to litigate those claims when the Illinois Appellate Court issued a final judgment in his appeal of decisions by

2

the Illinois Department of Human Rights ("IDHR") and Illinois Human Rights Commission ("ICHR").

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); see also *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A motion for reconsideration performs a valuable function where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.'" (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983))).

Here, in its original Order of dismissal, the court considered Plaintiff's allegations and arguments that the decision by the Illinois Appellate Court was not made "on the merits" and did not comply with the requirements of due process because Defendants made false statements before the IDHR; Plaintiff did not become aware of those statements until the IDHR issued its Notice of Dismissal; and those same false statements were subsequently relied upon by opposing counsel in arguments before the Illinois Appellate Court.

The court considered Plaintiff's allegations and nonetheless held that Plaintiff was provided sufficient due process and that his Title VII claims were considered "on the merits" such that he had a full and fair opportunity to litigate those claims, for two

3

reasons. First, the court noted that Plaintiff's own allegations made clear that he *did* have notice of Defendants' allegedly false statements once the IDHR issued its decision, and Plaintiff therefore had the opportunity to raise arguments on that basis, including rebuttal evidence and additional witness statements, when he requested review by the IHRC. Second, upon a thorough review of the Illinois Appellate Court's decision with which Plaintiff takes issue, this court found that that court's decision was not based in any way on Defendants' statements that Plaintiff alleges were untrue and defamatory. Rather, the Illinois Appellate Court held that Plaintiff's own allegations did not support allegations of racial harassment, discrimination, or retaliation, *regardless* of Defendants' response thereto before the IDHR, IHRC, or the Illinois Appellate Court.

Plaintiff's request for reconsideration relies upon a rehashing of the same arguments that the Illinois Appellate Court's decision was in error due to evidence and testimony that should not have been considered and that also consisted of fraud, defamation of character, and whistleblower violations by Defendants.

But motions for reconsideration that rehash old arguments and do not demonstrate a manifest error of law or fact should be rejected. See *Oto v. Metropolitan Life Insurance Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party." Motions that "rehashed old arguments … did not demonstrate that there was a disregard, misapplication or failure to recognize controlling precedent."); see also *Quaker Alloy Casting Co. v. Gulfo Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's

4

pleasure."). In addition, reconsideration is "inappropriate where a party seeks to raise arguments that could have been raised in the original briefing." *Netherlands Insurance Company v. Knight*, 2014 WL 3376873, at *1 (C.D. Ill. July 10, 2014).

Because Plaintiff already raised the alleged deficiencies in due process and evidentiary disputes in the IDHR, IHRC, and Illinois Appellate Court proceedings during this court's consideration of his First Amended Complaint and Defendants' prior Motion to Dismiss, and the court already considered the relevant facts, arguments, and law on that matter before issuing the prior Order, Plaintiff's request for reconsideration is inappropriate. Therefore, Plaintiff's Motion to Alter, Amend, or Reconsider Judgment (#39) is DENIED.

## II. MOTION TO CHANGE JURISDICTION OR VENUE

In Plaintiff's Motion to Change Jurisdiction/Venue, he asks this court to transfer his claims for defamation, whistleblower protection, and fraud from this court to the Circuit Court of Macon County, Illinois.

In this court's prior Order, the court dismissed Plaintiff's defamation and whistleblower claims because they were brought pursuant 5 U.S.C. § 2302, which governs only employees of the federal government. The court dismissed Plaintiff's conspiracy to defraud claim because it was brought pursuant to 18 U.S.C. § 371, a criminal statute that does not create a private right of action.

The court dismissed these three claims without prejudice. As the court explained, normally a complaint filed by a pro se plaintiff should be dismissed without prejudice, and he should be allowed the opportunity to correct deficiencies in his

pleadings. See *Donald v. Cook County Sheriff's Department*, 95 F.3d 548, 555 (7th Cir. 1996). The court noted that Plaintiff had responded to Defendants' first motion to dismiss by suggesting that he would attempt to replead these claims under Illinois statute or common law.

However, in giving Plaintiff the opportunity to file a second amended complaint, the court also observed that Plaintiff should only reallege those Illinois claims if there was also a basis for this court's jurisdiction, under either diversity jurisdiction or a combination of federal question and supplemental jurisdiction.

In requesting that this court transfer the case to the Macon County Circuit Court, Plaintiff alleges that at all relevant times he was a resident of Macon County, that Kenco was in business in Macon County, and that he therefore believed that Defendants would argue that any second amended complaint he filed should be dismissed due to this court's lack of (diversity) jurisdiction. Plaintiff therefore asked that the case be transferred so as to "lighten any burden of financial costs and judicial waste."

Regardless of Plaintiff's efforts to conserve judicial resources by having this matter transferred to the Macon County Circuit Court rather than dismissing the instant case and refiling it there, "[t]his case was not removed from an Illinois state court and there is no authority for this Court to do as Plaintiff has so requested." *Eckardt v. Clerk of Circuit Court of Tenth Judicial Circuit of Illinois*, 2011 WL 5118768, at *2 (C.D. Ill. Oct. 27, 2011). Plaintiff has cited no such authority, and the only statute relating to a change of venue in federal district courts authorizes transfer to other federal district courts (or another division within the same federal district). See 28 U.S.C. § 1404.

Therefore, Plaintiff's Motion to Change Jurisdiction/Venue (#40) must be DENIED.

### III.  MOTION TO DISMISS

A.  <u>Second Amended Complaint</u>

Plaintiff's Second Amended Complaint ("SAC") alleges that Kenco employees John Thacker, Eric Moritz, Melissa Rowcliff, Steve Raso, and Korey Brisch spoke to IDHR investigator Melody LaVault regarding Plaintiff's employment at Kenco. Plaintiff alleges that their statements were false and/or contained "misrepresented facts," that they knew they were false when communicated to LaVault, and that they were made with Kenco's authorization.  According to the SAC, the IDHR and LaVault relied upon the employee's statements authorized by Kenco and influenced LaVault in reaching her conclusion during an investigation regarding Plaintiff's employment with Kenco.

Plaintiff attaches the following as exhibits to the SAC.  Exhibit A is a June 2018 offer of employment from Kenco to Plaintiff, and Exhibit B is a November 2018 letter informing Plaintiff of his termination from employment at Kenco due to non-compliance with the Performance Improvement Plan ("PIP") process.  Five exhibits are brief (usually one-paragraph) summaries of statements by Thacker (Exhibit C), Moritz (Exhibit D), Rowcliff (Exhibit E), Raso (Exhibit F), and Brisch (Exhibit G) regarding Plaintiff's performance during his employment with Kenco, presumably made to the IDHR investigator.  Exhibit H is a position description for employment in "General Utility" at Fuyao Glass Illinois Inc. (wages listed at $16.06 per hour) that appears to

7

contain Plaintiff's signature at the bottom, accepting an offer of employment "contingent upon completion of a pre-placement physical examination, intoxicant screen and background check."

The SAC contains five counts. Plaintiff lists the first three causes of action as (I) Intentional Infliction of Emotional Distress ("IIED"), (II) Defamation/Slander, and (III) Fraud.

Count IV does not have a cause of action listed next to it. It consists, in full, of the following allegation:

> Brummett incorporates by references [*sic*] as if full set herein
>
> 24. That as a result of Defendant and its agents' actions Brummett have [*sic*] been forced to defend his name, take a large reduction in pay, benefits, and position titles and incurred cost; Defendant is liable.

Count V likewise does not have an apparent cause of action listed next to it, but does contain a bold subheading entitled Irreparable Harm, followed by six subparagraphs alleging "intentional interference," "false representation," and "false statements" that resulted in Plaintiff having difficulty finding employment and causing him to rely on government benefits.

In the SAC, Plaintiff alleges jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (pendent jurisdiction). Upon review of the SAC, the court is satisfied that it has subject matter jurisdiction under § 1332, as Plaintiff is a citizen of Illinois, Defendant Kenco is a citizen

of Tennessee,[1] and Plaintiff alleges damages in excess of $75,000. The court sees no bases in the SAC for federal question jurisdiction or pendent jurisdiction.

B. Standard for Dismissal

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In assessing a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff but need not accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements. See Vesely v. Armslist LLC, 762 F.3d 661, 664-65 (7th Cir. 2014); Iqbal, 556 U.S. at 678.

C. Count I: IIED

Under Illinois law,

> [t]o properly plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts to establish: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was

---

[1] Defendant does not argue otherwise in its Motion to Dismiss. The court recognizes that it has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party[,]" and that an argument regarding lack of subject matter jurisdiction "can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). However, based upon the current record, the court has no basis for concluding that Kenco's principal place of business in not Tennessee. Therefore, there is complete diversity of citizenship.

9

a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress."

*Bianchi v. McQueen*, 58 N.E.3d 680, 699 (Ill. App. Ct. 2016) (quoting *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)).

"In order for the conduct to be 'extreme and outrageous,' the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Holzhauer v. Town of Normal*, 483 F.Supp.3d 598 (C.D. Ill. 2020) (quoting *Swearnigen-El v. Cook County Sheriff's Department*, 602 F.3d 852, 864 (7th Cir. 2010)).

To the extent that Plaintiff's IIED claim is premised on his termination from employment at Kenco or failure to be restored to that employment following his complaint with the IDHR and subsequent appeals to the IHRC and the Illinois Appellate Court, "wrongful termination is not, by itself, outrageous enough to support an IIED claim." *Wood v. Continental Tire Americas, LLC*, 2019 WL 2188766, at *3 (S.D. Ill. May 21, 2019) (collecting cases for the proposition that wrongful discharge only supports an IIED claim when it is accompanied by "truly egregious conduct").[2]

---

[2] For examples of "truly egregious conduct" in the context of an employee's termination, see, e.g., *Pavilon v. Kaferly*, 561 N.E. 1245 (Ill. App. Ct. 1990) (The plaintiff stated an IIED claim where she alleged her employer offered her money for sex, fired her when she refused, threatened to kill her, rape her, and take legal action to challenge the custody of her child, and attempted to disrupt her new employment relationship.); *Anderson v. Viskase Corp.*, 1992 WL 211076 (N.D. Ill. Aug. 25, 1992) (The plaintiff stated an IIED claim where he alleged he was "berated, yelled at, and suspended from his job as a result of his missing work for treatment of skin cancer contracted on the job and for missing work to recover from two extremely serious heart attacks that occurred on the job."); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006) (The plaintiff stated a claim where managers forced her to climb up an unstable metal stairway to hook up

As an initial matter, Plaintiff cannot even plausibly allege *wrongful* termination here. As thoroughly described in the court's prior Order, Plaintiff's allegation that he was wrongfully terminated due to discrimination, retaliation, and/or hostile work environment based on race in violation of Title VII is barred by res judicata and may not be relitigated.

In addition, he has alleged no "truly egregious conduct" in addition to his termination. The only allegations contained in the SAC are that several of Defendant's employees made false statements or misrepresentations when communicating with the IDHR investigator who dismissed Plaintiff's charge of discrimination. But liability for extreme and outrageous conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Moreover,

> Liability for emotional distress is more constrained in the employment context. *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). "This is because 'personality conflicts and questioning of job performance are unavoidable aspects of employment and … frequently, they produce concern and distress.'" *Id*. (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006).

*Wood*, 2019 WL 2188766, at *2.

---

computer equipment during her pregnancy; sabotaged her computer to deny her access and alter her files; moved her office and files, causing her to be unable to locate paperwork; increased her workload, knowing she would not be able to meet the deadlines; and then terminated her.).

11

And none of the exhibits attached to the SAC, which are apparent summaries of comments made by Defendant's employees regarding Plaintiff's employment, are sufficient to support an IIED claim. Rather, they fall within the "personality conflicts and questioning of job performance" that are unavoidable aspects of employment. *Van Stan*, 125 F.3d at 567. For example, Thacker stated that Plaintiff's performance was "lacking from almost the start," described Plaintiff's failure to improve even after coaching and the development of a PIP, and characterized Plaintiff as "argumentative and defensive" in response to coaching; Moritz described Plaintiff's failure to complete certain documents, difficulty communicating with other supervisors or employees, and failure to adhere to safety regulations; Rowcliff stated that she was concerned Plaintiff was targeting another employee; Raso described the rationale behind developing a PIP for Plaintiff; and Brisch described Plaintiff's failure to comply with safety inspection checklist requirements.

Finally, "[i]t is well established in Illinois that statements made during quasi-judicial proceedings, such as an IDHR investigation, are privileged and cannot be the basis for a private case of action." *Moore v. State Farm Mutual Automobile Insurance Co.*, 2016 WL 7408815, at *3 (C.D. Ill. Dec. 22, 2016) (internal quotations omitted) (citing *Thomas v. Petrulis*, 465 N.E.2d 1059 (Ill. 1984)). Therefore, even if Defendant's employees' allegedly false statements to the IDHR investigator had qualified as "extreme and outrageous," they still could not serve as the basis for Plaintiff's IIED claim.

Thus, for the foregoing reasons, Count I is DISMISSED.

D.  Count II: Defamation/Slander

"To state a claim for defamation under Illinois law, a plaintiff must allege that 'the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publication caused damages.'" *Board of Forensic Document Examiners, Inc. v. American Bar Association*, 922 F.3d 827, 831 (7th Cir. 2019) (cleaned up) (quoting *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)).

In the SAC, Plaintiff alleges that Defendant's employees defamed and slandered him when they communicated false statements or misrepresentations to the IDHR investigator. As discussed above, under Illinois law "statements made during quasi-judicial proceedings, such as an IDHR investigation, are privileged and cannot be the basis for a private case of action." *Moore*, 2016 7408815, at *3. Therefore, Plaintiff cannot satisfy the second element required to state a defamation claim.

Thus, Count II must be DISMISSED.

E.  Count III: Fraud

Under Illinois law,

[t]he elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.

*Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

Here, Plaintiff has alleged that Defendant authorized its employees to make false statements during an IDHR investigation, and that the employees knew those

13

statements were false. Plaintiff has also alleged damages, in the form of new employment with lower wages and fewer benefits. However, Plaintiff has not alleged that Defendant intended that *Plaintiff* rely on their statements to the IDHR investigator in any way, nor that Plaintiff relied upon the truth of those statements. Rather, Plaintiff alleges that he did not even know that Defendant or its employees made those statements to the IDHR investigator until after the fact, at which point he knew them to be false and appealed to the IHRC and then the Illinois Appellate Court. Therefore, Plaintiff has failed to satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure, and as further clarified by *Twombly* and *Iqbal*.

Moreover, under Illinois law, a defendant may not be held liable for fraud on the basis of privileged statements. See *Kim v. Hoseney*, 545 Fed. Appx. 521, 522 (7th Cir. Oct. 30, 2013); *Moore*, 2016 7408815, at *3. As previously discussed in the court's analysis of Counts I and II, the statements made to the IDHR investigator are privileged and cannot serve as a basis for Plaintiff's civil claims in this matter.

Therefore, Count III is likewise DISMISSED.

F.  Count IV

Simply put, Count IV falls far short of the pleading standards imposed by the Federal Rules of Civil Procedure, *Twombly*, and *Iqbal*. Plaintiff identifies no purported cause of action, and the single-paragraph allegations listed under Count IV (that Plaintiff has "been forced to defend his name, take a large reduction in pay, benefits, and position titles and incurred cost") do not align with the elements of any identifiable cause of action.

Therefore, Count IV is DISMISSED for failure to state a claim.

G. Count V: Irreparable Harm

As with Count IV, Count V of the SAC fails to comply with federal pleading standards. "Irreparable Harm" is not a recognized cause of action. The subparagraphs listed under Count V consist either of alleged injuries or damages Plaintiff has suffered (which may be relevant to other counts for which damages might be a required element) or a rehashing of allegations already recounted regarding the false statements themselves.

Therefore, Count V is also DISMISSED for failure to state a claim.

H. Dismissal with Prejudice

"[A] pro se litigant may ordinarily receive one chance to amend a defective complaint before dismissal with prejudice[.]" *Egwuenu v. Charles Shwab & Co.*, 834 Fed. Appx. 245, 247 (7th Cir. Jan. 21, 2021) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013)).

Here, Plaintiff is on his Second Amended Complaint. Given the bases for dismissal in both the prior Order dismissing his First Amended Complaint and in the instant Order dismissing the Second Amended Complaint, the court concludes that leave to amend would be futile and should not be given. See *Ames v. Hutchinson*, 2021 WL 1175148, at *1 (S.D. Ind. Mar. 29, 2021).

Therefore, dismissal is with prejudice.

IT IS THEREFORE ORDERED THAT:

(1)  Plaintiff's Motion to Alter, Amend, or Reconsider Judgment (#39) is DENIED.

(2)  Plaintiff's Motion to Change Jurisdiction/Venue (#40) is DENIED.

(3)  Defendant's Motion to Dismiss (#56) is GRANTED.  Plaintiff's Second Amended Complaint (#48) is DISMISSED with prejudice.

(4)  This matter is terminated.

ENTERED this 21st day of September, 2023.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE